UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DINA JAEGER,<br>　　　Plaintiff,<br><br>　　　v.<br><br>CELLCO PARTNERSHIP d/b/a<br>VERIZON WIRELESS, et al.,<br>　　　Defendants. | No. 3:11cv1948 (SRU) |

## RULING AND ORDER

Dina Jaeger brought this action to enjoin the March 12, 2009 decision and order of the Connecticut Siting Council ("Council") granting Cellco Partnership d/b/a Verizon Wireless ("Cellco") a Certificate of Environmental Compatibility and Public Need ("Certificate") for the construction, maintenance, and operation of a wireless telecommunication facility ("Tower") at 188 Route 7, Falls Village, Connecticut.  Jaeger's eight-count complaint also seeks compensatory and punitive damages for alleged deprivations of constitutional rights and violations of state law in the granting of Cellco's Certificate.

In the present action, Jaeger has named Daniel F. Caruso; Colin C. Tait; Gerald J. Heffernan; Brian Golembiewski; Philip T. Ashton; Daniel P. Lynch Jr.; Barbera Currier Bell; and Edward S. Wilensky – members of the Council – as defendants.  These defendants are being sued in their individual and official capacities on all counts.  Jaeger has also named Cellco as a defendant in counts two through eight.

Prior to this action, Jaeger challenged the Council's decision in state and federal courts, alleging various constitutional and statutory violations.  The Connecticut Superior Court, the

Connecticut Appellate Court, the Federal District Court, and the Second Circuit Court of Appeals each dismissed those claims.

In her first claim – solely against the Council members – Jaeger alleges that in the process of granting the Certificate to Cellco, the Council deprived her of rights protected by the First and Fourteenth Amendments to the United States Constitution. Specifically, she alleges that the Council failed to adequately consider the alleged burden that the Tower would have upon the exercise of her religious beliefs. Jaeger also alleges a simultaneous deprivation of her fundamental rights under the Connecticut Constitution. In her second claim for relief, Jaeger alleges that her freedom to exercise religious beliefs – protected under the United States and Connecticut Constitutions – was encroached upon when the Council granted Cellco its Certificate. Jaeger's third claim for relief alleges that the Tower's construction, and the consequential depreciation of her property's value, constitutes an unlawful taking of her property without just compensation, in violation of the Fifth and Fourteenth Amendments. In her fourth claim, Jaeger further alleges violations of the Fifth and Fourteenth Amendments because Cellco and the Council failed to consider the historic nature of her property. Jaeger's fifth claim alleges substantive and procedural due process violations due to the Council's purported conflict of financial interest under Conn. Gen. Stat. § 16-50v. Jaeger's sixth claim alleges that the defendants violated Conn. Gen. Stat. § 16-50l – a statute that requires local government consultation as a mandatory step in the tower application process. She argues that there was no municipal consultation, and consequently she was deprived of due process and equal protection. In her seventh claim, Jaeger argues that she was deprived of equal protection and due process when the Superior Court judge failed to disqualify himself. She further alleges that the burdensome "aggrievement" requirement contained in Conn. Gen. Stat. § 4-183(a) posed an

unlawful deprivation of due process.  Lastly, in her eighth claim for relief, Jaeger alleges that the defendants negligently inflicted emotional distress upon her.

In their respective motions to dismiss, defendants have raised multiple objections to the plaintiff's claims.

For the following reasons, defendants' motions to dismiss are **granted.**

I.     **Standard of Review**

As part of their respective motions, defendants move to dismiss the complaint both for lack of standing and for failure to state a claim.  The party who seeks to exercise the jurisdiction of the court bears the burden of establishing the court's jurisdiction.  *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994).  To survive a motion brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff must clearly allege facts demonstrating that the plaintiff is a proper party to seek judicial resolution of the dispute.  *Id.*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether the plaintiff has stated a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## II.     Factual Background

The following facts are taken from Jaeger's complaint and for the purposes of this ruling are assumed to be true. On March 12, 2009, the Council granted Cellco a Certificate for the construction, maintenance and operation of a cellular phone tower located at 188 Route 7 South, Falls Village, Connecticut. (Compl. # 4.)

Jaeger and her two minor children live 1290 feet from the site of the proposed cellular tower. (Compl. # 7.) She is also co-owner of undeveloped land located across Route 7 from the cellular tower site. *Id.* The market value of both her home and the undeveloped land would be adversely impacted by the construction of the Tower. (Compl. # 5.) As a Native American, she draws spiritual inspiration and religious guidance from the sightings of bald eagles and other wildlife. (Compl. # 7.)

The Council has exclusive jurisdiction to determine the placement of wireless

telecommunications facilities in Connecticut.  *See* Conn. Gen. Stat. § 16-50g.  As a self-funded agency, the Council recovers administrative fees via an assessment levied against those who provide communications services and those who have come before the Council in the preceding year. (Compl. # 82.)  As a communications company, Cellco pays those fees. (Compl. # 83.)  Cellco is licensed by the FCC to operate a wireless communication system in the state of Connecticut.  (Compl. # 8.)  It acquired Alltel's cellular license for Litchfield County and a license to provide service in the 700MHz frequency band for 4G wireless service.  *Id.*  It is the Council's practice to invite industry representatives, including representatives of Cellco, to annual holiday parties. (Compl. # 84.)

The Council held a public hearing on July 1, 2008, which was continued until July 31, 2008.  (Compl. # 12.)  Jaeger was granted intervenor status by the Council in the certification proceeding.  (Compl. # 5.)   At the hearing, Jaeger introduced evidence to the Council that wireless transmission facilities negatively impact people and wildlife living nearby.  (Compl. # 12.)  Jaeger submitted a document to the Council showing that more than two hundred migratory birds have been sighted in the area near the proposed cellular tower site.  *Id.*  Jaeger also submitted evidence that the proposed cellular tower location would violate the Bald and Golden Eagle Protection Act ("BGEPA").  Similarly, Jaeger introduced a number of studies that demonstrate that humans living near cellular towers experience headaches, vertigo, visual disturbances, irritability, loss of memory, dizziness, restlessness, lethargy, and other ailments. (Def.'s Motion (Doc. # 36-2) at 27).

In its final decision, the Council granted Cellco a Certificate, pursuant to Conn. Gen. Stat. §16-50k.  It held that the Telecommunications Act precluded the Council from considering the effects of radio-frequency emissions and other harmful effects of telecommunication towers on

birds and humans.  Moreover, the Council found that the radio-frequency emissions from the proposed tower would be in full compliance with FCC regulations.  *Id.*  Additionally, the Council considered findings submitted by the United States Department of the Interior, National Park Service, Connecticut Department of Environmental Protection, Town of Canaan Planning and Zoning Commission, State Historic Preservation Service, Federal Communications Commission, and Cellco.

Following the approval of Cellco's Certificate, Jaeger appealed the Council's decision to the Connecticut Superior Court under the Uniform Administrative Procedures Act.  (Compl. # 14.)  On March 15, 2010, the Superior Court dismissed the plaintiff's appeal. (Compl. # 16.) The plaintiff then appealed that decision to the Connecticut Appellate Court. *Id.* During the pendency of that appeal, the Superior Court judge notified the parties that his spouse owned a beneficial interest in 28 shares of Cellco.  (Compl. # 17.)  That interest had existed at the time the trial court issued its ruling.  *Id.*  Following this disclosure, the trial court judge instructed counsel to state their respective positions.  *Id.*  The plaintiff promptly filed a motion to disqualify the judge, but subsequently withdrew that motion and re-filed it in the Appellate Court.  *Id.*  The motion was denied without opinion on September 22, 2010.  *Id.*

On April 26, 2011, the Connecticut Appellate Court affirmed the trial court's decision, and ruled that Jaeger had waived any claim for judicial disqualification.  (Compl. # 19.)  Jaeger then filed a motion for *certiorari* with the Connecticut Supreme Court.  The State Supreme Court denied that petition. (Compl. # 19.)

At the same time Jaeger appealed the Council's decision to the Superior Court, she also filed an action in this court against Cellco and the Council.  *Id.*   Jaeger's six-count complaint alleged, *inter alia*, violations of the International Migratory Bird Treaty ("IMBT"), the Migratory

Bird Treaty Act ("MBTA"), the Bald and Golden Eagle Protection Act ("BGEPA"), the Telecommunications Act ("TCA"), and the 10th and 14th Amendments to the U.S. Constitution. I dismissed the plaintiff's complaints on several grounds. (Compl. # 14.)

Plaintiff subsequently appealed this court's decision to the Second Circuit Court of Appeals. The Second Circuit affirmed. *Jaeger v. Cellco*, 402 Fed. App'x 645 (2d Cir. 2010). The plaintiff then unsuccessfully petitioned the Supreme Court of the United States for review. *Jaeger v. Cellco*, 131 S. Ct. 3068 (2011).

### III. Discussion

The defendants have moved to dismiss plaintiff's complaint on a variety of grounds. I address each argument below. In sum, I conclude that many of the plaintiff's claims were brought, or ought to have been brought, in her first federal litigation. Consequently, those claims are barred by the application of res judicata and issue preclusion. Her claims alleging injury from the state court proceedings are barred by the application of the *Rooker-Feldman* doctrine. Her other claims are dismissed for either lack of standing, failure to state a claim, or the termination of the applicable statute of limitations.

A. Res Judicata

"Under the doctrine of res judicata, or claim preclusion, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks omitted). The doctrine applies in later litigation "if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of

action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012).[1]  Jaeger has previously litigated several of her claims in two separate lawsuits.  Consequently, several counts in this lawsuit are barred by the application of either res judicata or collateral estoppel.

> *1. Members of the Connecticut Siting Council in their* Official *Capacities*

>> a. Counts One, Two, Four, Six, and Eight

In counts one, two, four, six, and eight, Jaeger seeks redress for alleged deprivations of her constitutional rights and violations of state law.[2]  Specifically, she argues that the First, Fifth, and Fourteenth Amendment to the United States Constitution – as well as Article One of the Connecticut Constitution – were violated when the Council rendered its decision to grant Verizon its Certificate.  Jaeger – in count eight of her complaint – also alleges negligent infliction of emotional distress in violation of Connecticut law.

Counts one, two, four, six, and eight are precluded by the application of res

---

[1] Courts generally apply federal law in determining the preclusive effect of a prior federal judgment, and state law in determining the preclusive effect of a prior state-court judgment.  *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *but see Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) (holding that when a federal court sitting in diversity dismisses a case "on the merits," the preclusive effect of that dismissal is determined by the law of the state in which it sits).  "Connecticut and federal res judicata law," however, "are substantially similar," *Gambino v. Am. Guarantee & Liability Ins. Co.*, No. 3:09-cv-304 (CFD), 2009 WL 3158151, at *2 (D. Conn. Sept. 28, 2009), though the two diverge on certain particulars.  *See Dembin v. LVI Services, Inc.*, No. 3:11-cv-1855 (JBA), 2013 WL 1131657, at *4 (D. Conn. Mar. 18, 2013) (noting that "an adequate opportunity to fully and fairly litigate" the claim is an element of res judicata under Connecticut law, but does not appear to be a required element under federal law).  Here, because the result would be the same under either federal or Connecticut law, I will analyze the preclusive effect of the prior federal and state court actions together.  *Cf. Simon*, 310 F.3d at 286 (stating that, because there is "no discernible difference between federal and New York law concerning res judicata and collateral estoppel . . . we see no need to undertake a separate analysis of the preclusive effect of the Federal and State Actions").

[2] In her prayer for relief, Jaeger seeks monetary damages and injunctive relief.  With respect to her claim for monetary damages against the Council members in their *official* capacities, monetary damages are barred by the Eleventh Amendment.  Accordingly, with respect to the official-capacity claims against the individual defendants, I can only consider her request for injunctive relief.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

judicata.³  It is undisputed that Jaeger has sued the same parties – the plaintiff has previously sued the Council⁴ – and there is nothing to suggest that she did not have an adequate opportunity to litigate her previous claims fully.

The only remaining issues concern whether the plaintiff has presented the same claim or cause of action and whether a final judgment was rendered on the merits.

    *(i)  Same Claim or Cause of Action*

In analyzing the preclusive effect of a prior judgment, "[i]t must first be determined that the second suit involves the same claim—or nucleus of operative fact—as the first suit." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (internal quotation omitted). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, [and] whether the same evidence is needed to support both claims." *Id.* (quoting *Nat'l Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)). "To ascertain whether two actions spring from the same 'transaction' or 'claim,' [courts] look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting 91 Restatement (Second) of Judgments § 24(b)).

---

³ I will briefly address the plaintiff's bare assertion that res judicata is inapplicable "in this Civil Rights Action on the facts of this case." Jaeger relies on *Ornstein v. Regan*, 574 F.2d 115 (2d Cir. 1978), to support this assertion. However, her reliance is misplaced. In *Ornstein*, the Second Circuit was concerned with a court's disinclination to allow a plaintiff to litigate a constitutional claim because that plaintiff, in an earlier action, had merely raised the constitutional violation *in argument*. In contrast, the plaintiff has already *litigated* constitutional violations in her previous action in this very court.

⁴ It is established law in Connecticut that an action against a government official in his or her official capacity is not an action against the official but, instead, is one against the official's office. *C&H Management L.L.C. v. Shelton*, 140 Conn. App. 608, 614 (2013) (internal citation omitted).

Counts one, two, four, six, and eight challenge a single transaction – Cellco's application for and the Council's ultimate decision to grant a Certificate. Jaeger has previously litigated the legality of that transaction in both state and federal courts; she has previously claimed *inter alia* that the Council's decision disregarded her religious freedom, violated the Fourteenth Amendment, and failed to comply with state environmental laws. The factual underpinnings of counts one, two, four, six, and eight essentially mirror the plaintiff's earlier pleadings – they all stem from the same nucleus of operative fact and relate to the same transaction.

Indeed, Jaeger's current and previous federal litigation both sought to enjoin the Council's decision and both relied on facts that are related in time, space, and origin to support her contentions.[5] Jaeger could have and should have appended these counts to her earlier complaints in this court because the success of each count is dependent upon a determination of the adequacy, or inadequacy, of the Council's actions. Each of Jaeger's current legal theories was available to her in 2009, and she has failed to present a persuasive argument to the contrary. Simply generating a new theory of liability does not render the claim a different transaction.

Jaeger has previously challenged the Council's decision to grant a Certificate in both state and federal court. This court will not decide the issue again.

      (ii)     *Judgment Rendered on the Merits*

In her previous action, Jaeger received a final judgment on the merits from this court; her six-count complaint alleged various substantive grievances, stemming from the Council's decision to grant Cellco its Certificate, and this court responded to each of those issues. The

---

[5] Because Jaeger could (and should) have raised these claims in her prior *federal* case, her various arguments concerning the limited application of res judicata to civil rights claims previously litigated in *state* court, *see* Pl.'s Mem. of Law in Opp'n to Def. Cellco d/b/a Verizon Wireless's Mot. to Dismiss Compl. at 25-32 (doc. # 41); Pl.'s Mem. of Law in Opp'n to the Connecticut Sitting Council Defs.' Mot. to Dismiss Compl. at 10-13 (doc. # 42), are unavailing.

Second Circuit subsequently affirmed the legality of the Council's decision.[6]  Thus, it is evident that with regards to counts one, two, four, six, and eight, Jaeger received a final judgment on the merits on the underlying transaction at issue – the Council's decision to grant Verizon its Certificate – and she had an adequate opportunity to litigate the matter fully.

For the reasons stated above, counts one, two, four, six, and eight – against named defendants Daniel F. Caruso; Colin C. Tait; Gerald J. Heffernan; Brian Golembiewski; Philip T. Ashton; Daniel P. Lynch Jr.; Barbera Currier Bell; and Edward S. Wilensky in their *official* capacities as members of the Connecticut Siting Council – are barred by the application of res judicata.

   2. *Cellco Partnership d/b/a Verizon Wireless*

      a. Counts Two, Four, Six, and Eight

Counts two, four, six, and eight against Cellco are barred by the application of res judicata for substantially the same reasons set forth above.  Those claims arise out of the same nucleus of operative fact as the plaintiff's earlier claims; they are being litigated against the same

---

[6] Jaeger argues that, because the Second Circuit concluded that the plaintiff lacked standing to bring her due process claim based on Conn. Gen. Stat. § 16-50v, that claim was never decided "on the merits" and the prior dismissal is therefore not entitled to preclusive effect.  In one sense, Jaeger's analysis is at least partially correct.  Because a dismissal for lack of standing is a dismissal for lack of subject matter jurisdiction, such dismissals are not considered "on the merits" and are not accorded full res judicata effect.  *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) ("Since a dismissal for lack of Article III standing is a dismissal for lack of subject matter jurisdiction . . . the [prior] judgment has no res judicata effect.") (internal quotation omitted).  But that does not end the matter.  Even where a prior case was dismissed for lack of subject matter jurisdiction, courts have nevertheless "applied *collateral estoppel* to the issue of standing." *Hollander v. Members of The Bd. of Regents of The Univ. of the State of N.Y.*, No. 10-cv-9277 (LTS), 2011 WL 5222912, at *2 (S.D.N.Y. Oct. 31, 2011) (emphasis added) (citing *Fulani v. Bentsen*, 862 F. Supp. 1140 (S.D.N.Y. 1994)); *see also Lowe v. United States*, 79 Fed. Cl. 218, 229 (2007) ("[A] dismissal for lack of subject matter jurisdiction retains *some* preclusive effect, but only bars those matters that have been actually litigated—typically, the specific jurisdictional issue(s) that mandated the initial dismissal.").  Here, however, I need not determine whether Jaeger is collaterally estopped from relitigating the standing issue because, as explained *infra*, the Second Circuit has already concluded that Jaeger lacks standing to bring her due process claim, *see Jaeger v. Cellco*, 402 Fed. App'x 645 (2d Cir. 2010), and she has not raised any new facts that would establish alternative grounds for standing.

–11–

parties; Jaeger received a final judgment on the merits, and she had an adequate opportunity to litigate those claims fully.

      B. Issue Preclusion

Collateral estoppel or issue preclusion applies when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits."[7] *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008).[8]

          *1. Connecticut Siting Council Members in their* Individual *Capacities*

        a. Counts One and Two

In counts one and two, Jaeger rests her assertions of constitutional violations upon an issue that has already been litigated and determined against her in a prior federal action: namely, the Tower's detrimental environmental effects on wildlife, the environment, and, in turn, her religious freedom. In 2010, this court ruled that the preemptive nature of the Telecommunications Act prevented the Council from considering the alleged environmental effects on wildlife when deciding whether to issue a certificate. That decision has since been affirmed by the Second Circuit Court of Appeals. *See Jaeger v. Cellco*, 402 Fed. App'x 645 (2d Cir. 2010). The determination of that issue was also indispensible to the final judgment on the merits confirming the legitimacy of the Council's decision. Consequently, Jaeger is collaterally

---

[7] The requirement of mutuality is not mandated in this context, particularly when issue preclusion is being used in a "defensive" -- as opposed to "offensive" -- manner.

[8] As other district courts have noted, "Connecticut's collateral estoppel law is very similar to federal estoppel law." *Sadler v. Lantz*, No. 3:07-cv-1316 (CFD), 2010 WL 3418127, at *2 (D. Conn. Aug. 20, 2010). Under Connecticut law, to be subject to collateral estoppel, an issue must have been: "(1) 'fully and fairly litigated,' (2) 'actually decided,' and (3) 'necessary to the judgment' in the first action, . . . and (4) 'identical' to the issue to be decided in the second action." *Id.* (quoting *Virgo v. Lyons*, 209 Conn. 497, 501 (1988); *State v. Joyner*, 255 Conn. 477, 490 (2001)). Thus, to the extent the issues addressed in this opinion were litigated in the prior state—rather than federal—action, Jaeger is similarly barred from relitigating them under Connecticut's collateral estoppel law.

estopped from litigating counts one and two against the Council members in their individual capacities.

Moreover, in count one, Jaeger also alleges that her federal and state constitutional right to petition the government has been violated. The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). That right is not absolute, and does not include the absolute right to speak in person to officials. *Stengel v. City of Columbus,* 737 F. Supp. 1457, 1459 (S.D. Ohio 1988). The right to petition the government for redress of grievances includes the right to file lawsuits as well as the right to pursue administrative grievances. *Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 388 (W.D.N.Y. 1998). Jaeger was granted intervenor status by the Council and was permitted to participate in its hearings. Moreover, after receiving an adverse decision, she was afforded the opportunity to pursue her alleged grievances in state and federal court. Consequently, Jaeger has not been deprived of her right to petition the government; she has simply been an unsuccessful petitioner.

        b.   Counts Four and Six

In count four, Jaeger alleges that Cellco's application was deficient in two ways: (1) it failed to consider the historic nature of her home; and (2) it failed to satisfy all applicable environmental laws. She also alleges that the Council failed to address these deficiencies. As such, the plaintiff contends that the Fifth and Fourteenth Amendments were violated. That issue is also barred by the application of issue preclusion.

First, the Council, in its opinion, did consider the historic nature of her home and declined to find Cellco's application deficient. Second, in finding Cellco's application sufficient, the Council determined that the facility would not conflict with Connecticut's environmental

policies. The Council decided those issues, the state courts affirmed the Council's decision, and the plaintiff had a full and fair opportunity to litigate those issues. Thus, the assertion of those issues in this litigation is barred by the application of issue preclusion.

    C. Standing

In count five of her complaint, Jaeger alleges that she was deprived of procedural and substantive due process when the Council rendered its decision. Specifically, she argues that by virtue of Conn. Gen. Stat. § 16-50*v* there was a financial conflict of interest that precluded the Council from considering Cellco's application. Notwithstanding the potential merits of this claim, the Second Circuit has addressed this argument and concluded that the plaintiff lacks standing to bring it. *Jaeger v. Cellco*, 402 Fed. App'x 645 (2d Cir. 2010). Because Jaeger has failed to present any new facts that would establish standing, I am bound by the Second Circuit's decision.

Consequently, with respect to count five, Jaeger lacks standing to sue for a declaratory judgment that section 16-*50v* of the General Statutes of Connecticut violates due process.

    D. *Rooker-Feldman* Doctrine

Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Cave v. E. Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008). In count seven, Jaeger alleges that the state courts deprived her of equal protection and due process. She rests her assertion on several premises: (1) The trial judge failed to disclose, in a timely manner, his spouse's beneficial financial interest in Cellco, and the Appellate Court declined to remedy that problem; (2) The parties' opportunity to appear before the trial judge and "state their positions" regarding the purported financial interest was provided post-decision; (3) The Appellate Court

determined that Jaeger had waived her claim regarding the disqualification of the trial court judge; (4) The mandatory "aggrievement" test propounded by Connecticut state courts on a party taking an administrative appeal placed an unfair burden on the plaintiff ; and (5) The trial judge failed to block Cellco's attempts to intervene in the plaintiff's appeal of the Council's decision.

The *Rooker-Feldman* doctrine, which precludes federal district courts from sitting as appellate tribunals to review state-court decisions, bars this court from exercising subject matter jurisdiction when: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (internal quotation omitted).

The *Rooker-Feldman* doctrine bars count seven of Jaeger's complaint. Jaeger lost in a state adjudication – in the Superior Court on March 15, 2010 and in the Appellate Court on February 8, 2011 – before she commenced this federal lawsuit. She plainly invites this court to remedy alleged injuries inflicted by the state adjudications. It would be impossible for this court to provide a remedy without also sitting in review of the state-court judgments. Consequently, count seven is dismissed against all defendants.

    E. <u>Failure to State a Claim</u>

In count three, Jaeger argues that the consequential diminution in the value of her property, by virtue of the approval of the Tower, constituted an unconstitutional taking in violation of the Fifth Amendment.

An unlawful takings claim "is not ripe if 'a remedy potentially is available under the state constitution's provision.'" *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 109-10 (2d Cir. 2009)

(quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995)); *see also Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187-88 (1985) (stating that a landowner "has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State"). Thus, "[b]efore a federal takings claim can be asserted, compensation must first be sought from the state if it has a 'reasonable, certain and adequate provision for obtaining compensation.'" *Island Park, LLC.*, 559 F.3d at 110 (quoting *Villager Pond*, 56 F.3d at 379-80). Moreover, a "plaintiff must pursue relief under a state compensation procedure . . . even where it remains unsure and undeveloped." *Id.* (internal quotation omitted).

The Connecticut Constitution contains its own takings clause: "The property of no person shall be taken for public use, without just compensation therefor." CONN. CONST. ART. 1, § 11. "This clause may be used as the basis of an inverse condemnation action to recover compensation for property taken from private individuals, even in the absence of a separate statutory remedy." *Villager Pond*, 56 F.3d at 380 (citing *Laurel, Inc. v. State*, 169 Conn. 195, 200 (1975)).

Here, however, Jaeger does not allege that she attempted to utilize state-level procedures to obtain compensation from the State of Connecticut. Nor has she alleged that such procedures are unavailable. Accordingly, count three must be dismissed as unripe.[9]

---

[9] Jaeger attempts to avoid this result by arguing that her takings claim is not subject to the ripeness requirement because she seeks only injunctive relief, and not monetary compensation. Jaeger, however, offers no explanation for why that distinction matters, nor does she cite any authority to support her position. On the contrary, multiple circuits have expressly rejected that very argument and applied the ripeness requirement to taking claims seeking injunctive or declaratory relief. *See Alto Eldorado Partnership v. Cnty. of Santa Fe*, 634 F.3d 1170, 1174 (10th Cir. 2011) (stating that injunctive relief from an unlawful taking "is not available where there is an unexplored avenue for compensation" and noting that "[i]rrespective of the nature of the remedy sought . . . the claim here is unripe because the developers have not utilized the available state procedure to seek compensation for the alleged taking as required by *Williamson County*"); *Severance v. Patterson*, 566 F.3d 490, 497 (5th Cir. 2009) (rejecting argument that a takings claim seeking injunctive relief is excused from the ripeness requirement, and noting that "in crafting the state procedures requirement in *Williamson County*, the Supreme Court relied on *Ruckelshaus v. Monsanto Co.*,

F. Statute of Limitations

In count eight, Jaeger raises a statutory claim of negligent infliction of emotional distress. That claim, however, is not only barred by the doctrine of res judicata, but is time-barred as well.

Under Conn. Gen. Stat § 52-584:

> No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered.

The Council issued its ruling on March 12, 2009. Thus, any claim for negligent infliction of emotional distress had to be brought prior to March 12, 2011. Because the plaintiff filed this action on December 18, 2011, count eight is barred as untimely under Conn. Gen. Stat. § 52-584.[10]

## IV. Conclusion

The motions to dismiss (docs. # 34 and # 36) are granted. The clerk shall enter judgment in favor of the defendants and shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 5th day of April 2013.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

467 U.S. 986, 1018 n.21, 104 S.Ct. 2862, 2881 n.21, 81 L.Ed.2d 815 (1984), a case in which the plaintiff sought only injunctive and declaratory relief"); *von Kerssenbrock-Praschma v. Saunders*, 121 F.3d 373, 380 (8th Cir. 1997) ("[W]e hold that the *Williamson* requirement applies equally to takings claims for damages and equitable relief brought against the states."); *see also Peters v. Village of Clifton*, 498 F.3d 727, 730 (7th Cir. 2007); *Daniel v. Cnty. of Santa Barbara*, 288 F.3d 375, 384-85 (9th Cir. 2002); *Bickerstaff Clay Prods. Co. v. Harris Cnty.*, 89 F.3d 1481, 1490 (11th Cir. 1996). Thus, Jaeger's argument is unavailing.

[10] To the extent that Jaeger alleges that the statutory period is tolled by the continuing course of conduct doctrine, that doctrine is simply inapplicable to the present set of facts; the only conduct that can potentially be described as "wrongful" is the Council's decision. There is no *continuing* wrongful conduct, by any defendant, as required by the continuing course of conduct doctrine. *See Watts v. Chittenden*, 301 Conn. 575, 585 (2011).