## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DINA JAEGER,<br>　　　　Plaintiff, | | |
| 　　v. | | No. 3:11-cv1948 (SRU) |
| CELLCO PARTNERSHIP, ET AL.,<br>　　　　Defendants. | | |

## RULING ON MOTION FOR ATTORNEYS' FEES

Following dismissal of the plaintiff, Dina Jaeger's complaint, defendant Cellco

Partnership d/b/a Verizon Wireless ("Cellco") moved for attorneys' fees pursuant to 42 U.S.C. §

1988(b).  For the reasons set forth below, Cellco's motion for attorneys' fees is granted, but the

amount awarded is reduced.

### I.　　Background and Procedural History

Jaeger brought this action to enjoin the March 12, 2009 decision and order of the

Connecticut Siting Council ("Council") granting Cellco a Certificate of Environmental

Compatibility and Public Need ("Certificate") for the construction, maintenance, and operation

of a wireless telecommunication facility at 188 Route 7, Falls Village, Connecticut.   Jaeger's

eight-count complaint also sought compensatory and punitive damages for alleged deprivations

of constitutional rights and violations of state law in the granting of Cellco's Certificate.  In

addition to Cellco, Jaeger's complaint named Daniel F. Caruso; Colin C. Tait; Gerald J.

Heffernan; Brian Golembiewski; Philip T. Ashton; Daniel P. Lynch Jr.; Barbera Currier Bell;

and Edward S. Wilensky – all members of the Council – as defendants.

Prior to instituting this action, Jaeger had challenged the Council's decision in state and federal courts, alleging various constitutional and statutory violations.  The Connecticut Superior Court, the Connecticut Appellate Court, this court, and the Second Circuit Court of Appeals each dismissed those claims.  Jaeger subsequently initiated this lawsuit, reiterating many of her previous constitutional claims, re-styled as claims under 42 U.S.C. § 1983, and adding others related to perceived constitutional and common law violations she suffered in the course of the state court proceedings. The defendants separately moved to dismiss Jaeger's complaint and on April 5, 2013, I granted their motions in their entirety.  I dismissed many of Jaeger's claims on the ground that they were brought, or ought to have been brought, in her first federal litigation and were therefore barred by the application of res judicata and issue preclusion. I dismissed her claims alleging injury from the state court proceedings, because those claims were barred by the application of the *Rooker-Feldman* doctrine.  Finally, I dismissed the remaining claims for lack of standing, failure to state a claim, and/or the expiration of the applicable statute of limitations. *See* Ruling and Order (doc. # 54).

## II.    Discussion

### A.  The Defendants are Entitled to Attorneys' Fees

A court may award the prevailing party in a section 1983 case reasonable attorneys' fees. 42 U.S.C. § 1988(b).  When the prevailing party is the defendant, attorneys' fees will not be awarded unless the defendant can show that "the plaintiff's action was frivolous, unreasonable or without foundation . . . or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (Title VII case)); *see also, e.g.*, *Davidson v. Keenan*, 740 F.2d 129, 132-33

(2d Cir. 1984). "This heavier burden is placed upon prevailing defendants in order to balance the policies in favor of encouraging private citizens to vindicate constitutional rights with those policies aimed at deterring frivolous or vexatious lawsuits." *Lamson v. Blumenthal*, No. 3:00-CV-1274 (EBB), 2003 WL 23319516, at *2 (D. Conn. Oct. 3, 2003) (citing *Christiansburg*, 434 U.S. at 422).

The decision to award fees to a defendant is "entrusted to the discretion of the district court." *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001). In exercising that discretion, a district court should consider the procedural history of the case; however, whether or not the case survived a motion to dismiss or motion for summary judgment is not dispositive of a motion for attorneys' fees. *See Perry v. S.Z. Rest. Corp.*, 45 F. Supp. 2d 272, 274 (S.D.N.Y. 1999); *Dangler v. Yorktown Central School*, 777 F. Supp. 1175, 1178 (S.D.N.Y. 1991); *Steinberg v. St. Regis-Sheraton Hotel*, 583 F. Supp. 421, 424 (S.D.N.Y. 1984); *see also Taylor v. Harbour Point Homeowners Ass'n*, 690 F.3d 44, 50 (2d Cir. 2012) ("To be clear, by 'meritless' we mean 'groundless or without foundation,' and not merely that Taylor ultimately lost her case.").

In *Christiansburg*, the Supreme Court urged district court judges to "resist the understandable temptation to engage in post hoc reasoning" in deciding whether to award a defendant attorneys' fees, because "the course of litigation is rarely predictable" and "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." 434 U.S. at 422-23. As a result, the cases that have been found "frivolous, unreasonable, or without foundation" typically involve particularly vexatious behavior on the part of the plaintiff. For example, the Second Circuit has upheld the

3

imposition of attorneys' fees where the plaintiff previously litigated the issues and lost before

bringing his or her claim in federal court. *See Eastway Constr. Corp. v. City of New York*, 762

F.2d 243, 246 (2d Cir. 1985); *Gerena-Valentin v. Koch*, 739 F.2d 755, 756-57 (2d Cir. 1984).

By contrast, the mere fact that a plaintiff's claim is weak, without more, does not mandate the

imposition of attorneys' fees in favor of a prevailing defendant. *See, e.g.*, *Sista v. CDC Ixis N.*

*Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006) (upholding denial of attorneys' fees in Title VII

action brought by white male alleging "Indian Conspiracy" in his workplace, where plaintiff's

claim was so weak that he abandoned it at oral argument on motion for summary judgment).

Taking guidance from those decisions, I find that attorneys' fees are warranted in this

case. Jaeger brought this suit to contest the legality of the Council's decision to grant Cellco a

certificate. Jaeger's previous federal litigation marshaled the same facts to challenge the same

transaction, and both this court and the Second Circuit affirmed the legality of the Council's

decision. The validity of the Council's decision was also upheld by the Connecticut courts. Yet,

despite the repeated rulings against her, Jaeger refuses to accept that the law is not on her side.

She persists in challenging, and forcing Cellco to expend resources defending, the exact same

transaction. Although her claims may not have been "frivolous, unreasonable, or without

foundation" in 2009, the vigor with which she continues to pursue them renders them

unreasonable today. Accordingly, Cellco is entitled to an award of attorneys' fees.

### B. Amount of Fees to Which Defendants are Entitled

The party seeking fees bears the burden of demonstrating that its requested fees are

reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). The Second Circuit requires a party

seeking an award of attorneys' fees to submit contemporaneous time records that indicate "for

each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Defendant Cellco requests $57,586.91 in attorneys' fees and it submitted invoices from the law firm Robinson & Cole, which contain the required information, to support its request. *See* Babbitt Aff. (doc. # 60). The invoices reflect 147.1 hours of total partner time, billed to Verizon Wireless at a rate of $410 per hour prior to April 2012 and $425 per hour after April 2012, less a 12% courtesy discount, and 7.2 hours of associate time billed to Verizon at $230 per hour, less a 12% courtesy discount. *Id.* Cellco also provided background information on the attorneys who worked on this case – Bradford Babbitt, a partner at the firm with twenty years of litigation experience in state and federal courts, and Jamie Landry, an associate at the firm with approximately five years of experience. *Id.* Jaeger objects to the imposition of attorneys' fees, but her brief does not challenge the reasonableness of the total fees requested or the reasonableness of the attorneys' hourly rates. Nevertheless, I conclude that $57,586.91 is not a reasonable fee in this case.

In calculating reasonable attorneys' fees, district courts typically multiply the hours reasonably expended by a reasonable hourly rate for attorneys in the district in which the court sits, to determine the "presumptively reasonable fee." *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 n.2 (2d Cir. 2010); *Simmon v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. In setting the "reasonable hourly

5

rate," the court should consider the "case specific variables" that the Second Circuit and other courts have "identified as relevant to the reasonableness of attorney's fees." *Id*.  Those variables include the time and labor required to litigate the case, the novelty and difficulty of the issues and level of skill necessary to address them, the attorneys' customary hourly rates and their experience, reputation and ability, and the nature and length of the professional relationship with the client.  *Id.* at 186 n.3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).[1]

In addition to the hourly rate, the district court must also determine whether the number of hours is reasonable. "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted).

Finally, the Second Circuit has held that district courts have discretion to depart from the "presumptively reasonable fee" where equitable considerations counsel departure.  *See Johnson v. New York City Transit Auth.*, 823 F.2d 31, 32-33 (2d Cir. 1987); *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1028 (2d Cir. 1979).  Such considerations include economic disparities between the parties, "the plaintiff's degree of good faith in prosecuting the action," *Faraci*, 607

---

[1] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rates; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).  In *Arbor Hill*, the Second Circuit counseled district courts to consider the *Johnson* factors, among others, and also to consider that "such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190.

F.2d at 1029, and any other "mitigating factors bearing on the degree of sanction," *Johnson*, 823 F.2d at 33.  Ultimately, the district court should impose attorneys' fees that are sufficient to "fulfill the deterrent purpose of the statute," without causing "financial ruin" to the plaintiff. *Faraci*, 607 F.2d at 1029.

Applying those standards, the hourly rates charged by the attorneys appear reasonable. Attorney Babbitt, the attorney primarily responsible for the *Jaeger* case, has twenty years of litigation experience and is the co-chair of the firm's litigation section and the chair of its business litigation group.  Babbitt Aff. 2.  Babbitt served as lead counsel for Verizon in the related state court proceedings and also served as co-counsel in the 2009 federal case.  *Id.* at 2-3. Attorney Landry, the associate who billed over seven hours of time on the case, had nearly five years of experience during the relevant period.  *Id.* at 2.  Verizon also appears to have a longstanding relationship with Robinson & Cole and it receives a 12% courtesy discount on services provided by the firm, significantly decreasing its overall attorneys' fees.

The number of hours expended, however, does not appear reasonable.  As Cellco itself repeatedly has emphasized, Jaeger's claims in this case arose out of the same transaction as her previous cases and largely involved an attempt to re-litigate the same issues over again.  Jaeger's claims were dismissed at an early stage of this litigation because they were groundless. Additionally, Attorney Babbitt was extremely familiar with the underlying facts prior to the institution of this action, because he was actively involved in the previous state and federal cases. Therefore, it should not have taken approximately 120 hours for Robinson & Cole to prepare Cellco's briefing on its motion to dismiss and the firm need not have spent 154.3 hours overall in defending Cellco against Jaeger's claims.

A reduced award is also appropriate in this case because it appears that Jaeger subjectively acted in good faith in bringing this action.  Moreover, although Jaeger has not submitted information regarding her own financial status, she correctly points out she Verizon is a multi-billion dollar company.  Balancing these equitable considerations with the statutory purpose of deterrence, and accounting for the largely duplicative nature of Jaeger's claims, an award of 25% of Cellco's requested attorneys' fees is appropriate in this case.  Accordingly, attorneys' fees are awarded in the amount of $14,396.73.

### III.    Conclusion

For the foregoing reasons, the defendant's motion for attorneys' fees is **GRANTED** in the amount of $14,396.73.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of April 2014.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

8